**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

State of West Virginia,
Plaintiff Below, Respondent

**v.)  No. 22-859** (Tucker County CC-47-2020-F-8)

Darrell S.
Defendant Below, Petitioner

## MEMORANDUM DECISION

Petitioner Darrell S. appeals the sentencing order entered by the Circuit Court of Tucker County on October 24, 2022, following his convictions for one count of first-degree sexual assault and six counts of first-degree sexual abuse.[1] On appeal, the petitioner alleges the court erred when it denied his motion for a bill of particulars, when it denied his motion to dismiss the indictment, and in various rulings regarding the admissibility of evidence. Upon our review, we determine oral argument is unnecessary and that a memorandum decision is appropriate. *See* W. Va. R. App. P. 21(c).

In 2020, the petitioner was indicted for one count of first-degree sexual assault and six counts of first-degree sexual abuse. The indictment named the petitioner's cousin, C.S., as the victim and alleged C.S. was under the age of twelve between October 1, 2013, and October 1, 2015, when the crimes occurred.

Before trial, the petitioner filed a motion for a bill of particulars to clarify the time frame in which the State alleged the crimes were committed. At a hearing on this issue, the State asserted that C.S. could not remember specific dates, but he indicated that the acts occurred when he was between the ages of nine and eleven. The circuit court denied this motion because the State did not "have any further information" regarding the dates of the alleged offenses. The petitioner also filed a motion to dismiss the indictment, alleging that the two-year time frame set forth in the indictment did not "provide enough specificity to prepare a defense . . . or use a conviction in this matter as a bar to a future prosecution for the same offense." The court denied this motion, finding that the indictment provided "fair notice of the charges against which he must defend," and that the dates alleged in the indictment "together with the remaining allegations" enabled the petitioner "to assert an acquittal or conviction in order to prevent being placed in double jeopardy."

---

[1] The petitioner appears by counsel Morris C. Davis. The respondent appears by counsel Patrick Morrisey, Attorney General; and Mary Beth Niday, Assistant Attorney General. Initials are used where necessary to protects the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

1

At a pretrial hearing on the admissibility of the petitioner's statement to the police, West Virginia State Police Trooper Christopher Donelson testified that the petitioner "was arrested and then taken down to State Police Barracks for interview." After hearing this testimony, the petitioner moved to exclude his statement based on the prompt presentment rule, arguing that, after his arrest he should have been taken to the magistrate for an initial appearance; instead, he was taken to the State Police barracks for the primary purpose of obtaining a statement from him. At a subsequent hearing on this motion, Justin Sigley, Chief Deputy for the Tucker County Sheriff's Department, testified that after the petitioner's arrest, he was taken to the State Police barracks "for processing," which included fingerprinting and photographing the petitioner, and completing a criminal disposition report. While the petitioner was at the barracks, he agreed to give a statement. Because the magistrate was unavailable when the petitioner was arrested, he was taken to jail after processing, and he appeared before the magistrate the following morning. Ultimately, the circuit court found no violation of the prompt presentment rule because the petitioner was taken to the State Police barracks "for routine processing," which did not constitute an unreasonable delay in presentment to the magistrate. The court also found that the magistrate was unavailable when the petitioner was arrested, so "the time spent giving a statement was not a factor in any delay" of the petitioner's initial appearance before the magistrate.

The State filed a motion to admit evidence under Rule 404(b) of the West Virginia Rules of Evidence of the petitioner's 1995 guilty plea to first-degree sexual assault to prove that he had a lustful disposition toward children.[2] The victim in that case was the petitioner's eight-year-old stepdaughter, and the State alleged C.S. was between the ages of nine and eleven when he was sexually assaulted and abused by the petitioner. At a pretrial hearing, the State introduced documentary evidence from the Circuit Court of Monongalia County of the petitioner's prior convictions. The State argued that these convictions were not too remote in time to be admissible because the petitioner was imprisoned from 1995 to 2010, and he had only been out of prison for three years when he began perpetrating his crimes on C.S. After a hearing, the circuit court granted the State's motion, finding by a preponderance of evidence that the acts occurred, the prior convictions were relevant to show that he had a lustful disposition toward children, and the probative value of this evidence was "not outweighed by any relevant factors." The court further found that, although the petitioner's stepdaughter and C.S. were different genders, they were similar ages when they were victimized.

The State also filed a motion to exclude evidence that C.S. had "sexual relations with an older woman." The petitioner opposed this motion, arguing that if Rod McCullough, a psychologist who treated C.S., testified as expected that C.S. suffered from a psychological disorder because he was a victim of a sex crime, then he should be able to ask Mr. McCullough whether C.S.'s sexual relations with the older woman contributed to this disorder. During a pretrial hearing on this issue, Mr. McCullough was qualified as an expert in evaluating child victims of sexual assault. Mr. McCullough testified that C.S. exhibited traits of a victim of sexual assault or sexual abuse, and C.S.'s sexual relationship with an older woman occurred "many years" after "the crisis" he suffered with the petitioner, and Mr. McCullough did not believe C.S.'s sexual relationship with the older woman caused him to display the traits of abuse that he observed. Mr. McCullough explained that one of these traits was "reactive behavior" that is typical "where the

---

[2] In the same case, the petitioner also pled guilty to sexual abuse of a child by a parent.

2

perpetrator would have been the same gender." Mr. McCullough continued that when he first saw C.S.,

> he was in full post-traumatic stress crisis that was misinterpreted as being psychosis and those are purely reactive to what he described as being sexually traumatized by a male. He emphasized several times during our therapies . . . that there was no penetration that happened and that is a classic reaction . . . for a male child to exhibit . . . to make sure people understand that he's not gay and so that was [a] significant part of [C.S.'s] time with me initially.

During cross-examination, Mr. McCullough opined that, "at the base of it the victim has to see it as being traumatic and [C.S.] did not see the relationship with the older woman [as being] traumatic." After the hearing, the circuit court granted the State's motion, ruling that C.S.'s relationship with the older woman was not relevant to explain C.S.'s post-traumatic stress disorder diagnosis because "Mr. McCullough made it clear that the sexual relationship with the older woman had no contributing influence on any traits of sexual abuse exhibited by [C.S.] because [he] did not consider this encounter(s) to be traumatic in any way."

The State also moved to exclude evidence of C.S.'s marijuana use, which C.S. had disclosed during counseling sessions with Mr. McCullough, arguing that this would be inadmissible character evidence. The petitioner argued that this evidence was relevant because C.S.'s fear of getting in trouble for using marijuana was a motive to fabricate the allegations against him. The circuit court granted the State's motion, finding evidence of C.S.'s marijuana use to be irrelevant and "more prejudicial than probative."

At the petitioner's jury trial, C.S. testified that the petitioner sexually assaulted him once and sexually abused him multiple times between 2013 and 2015, when C.S. was between nine and eleven years old. C.S. recounted details of incidents in which the petitioner made C.S. touch the petitioner's penis, and other occasions in which the petitioner touched C.S.'s penis. During cross-examination, the defense introduced into evidence a 2020 discharge summary from the Psychiatric Institute of Washington, which contained a statement from C.S. that he suffered from a "single act of sexual abuse five years prior." The circuit court admitted this evidence as a prior inconsistent statement.

Through Chief Deputy Sigley, the State admitted evidence of the petitioner's statement to the police and his prior convictions that were documented in the 1995 plea agreement. C.S.'s parents testified to the behavioral changes they observed in C.S. between 2013 and 2015, and that although they were aware of the petitioner's prior convictions, they did not believe the petitioner posed a danger to C.S.

Mr. McCullough testified that, in 2020, C.S. disclosed to him that he was sexually victimized by the petitioner when he was between the ages of nine and eleven. Mr. McCullough also testified that psychological testing and the ten or eleven counseling sessions they had together corroborated C.S.'s disclosures. Mr. McCullough further opined that C.S. demonstrated behaviors that are typical of a victim of sexual abuse or assault, such as minimizing "the amount" of abuse and disassociation that affected C.S.'s perception of timelines and the details of the abuse. Mr.

McCullough stated that C.S. had been previously diagnosed with bipolar disorder, but his psychological testing "rule[d] out bipolar . . . [and] firmly put him in post-traumatic stress." McCullough testified that C.S. had not disclosed his victimization by the petitioner immediately after it occurred because he was worried that "bad things would happen to his family," and he would be ridiculed as a homosexual. The State also played portions of C.S.'s counseling sessions in which he described the petitioner's sexual misconduct. During cross-examination, Mr. McCullough stated that, based upon psychological testing and the counseling sessions, he believed that C.S suffered from post-traumatic stress disorder because he was a victim of sexual abuse. But Mr. McCullough agreed that "depression, anger, paranoia, thought confusion, and post-traumatic stress disorder come from a variety of causes," and "just because you were sexually assaulted doesn't mean you have these symptoms." Mr. McCullough also clarified that the goal of C.S.'s counseling "was not to determine whether or not he was sexually abused, . . . [it was] to make sure he was behaviorally stabilized."

The petitioner testified and denied C.S.'s allegations. During cross-examination, the petitioner denied that he was guilty in the 1995 case and stated that although he pled guilty, all the charges in the case were "lies." In response to this testimony, the circuit court allowed the State to introduce evidence from a police report filed in the 1995 case in which the petitioner confessed to sexually abusing his stepdaughter. The court admitted this evidence as a prior inconsistent statement. After the trial, the petitioner was convicted as charged, and the circuit court effectively sentenced the petitioner to an indeterminate term of 110 to 360 years of imprisonment. He now appeals from the circuit court's sentencing order following his convictions.

First, the petitioner argues that the circuit court erred when it denied his motion to dismiss the indictment and motion for a bill of particulars because his indictment so lacked specificity that it violated the Sixth and Fourteenth Amendments of the United States Constitution and Article III, Section 14 of the West Virginia Constitution, as well as Rule 7 of the West Virginia Rules of Criminal Procedure. "Generally, the sufficiency of an indictment is reviewed de novo. An indictment need only meet minimal constitutional standards, and the sufficiency of an indictment is determined by practical rather than technical considerations." Syl. Pt. 1, in part, *State v. Maichle*, 249 W. Va. 326, 895 S.E.2d 181 (2023) (quoting Syl. Pt. 1, *State v. Legg*, 218 W. Va. 519, 625 S.E.2d 281 (2005)). In addition, "[t]he denial of a motion for a bill of particulars rests in the sound discretion of the trial court and unless it appears that such discretion is abused the ruling of the trial court will not be disturbed." Syl. Pt. 4, *State v. Slie*, 158 W. Va. 672, 213 S.E.2d 109 (1975).

The petitioner's arguments turn on whether the indictment meets minimum requirements. We have held that

> [a]n indictment is sufficient under Article III, § 14 of the West Virginia Constitution and W. Va. R. Crim. P. 7(c)(1) if it (1) states the elements of the offense charged; (2) puts a defendant on fair notice of the charge against which he or she must defend; and (3) enables a defendant to assert an acquittal or conviction in order to prevent being placed twice in jeopardy.

4

Syl. Pt. 6, *State v. Wallace*, 205 W. Va. 155, 517 S.E.2d 20 (1999); *accord State v. Adams*, 193 W. Va. 277, 281-82 n.8, 456 S.E.2d 4, 8-9 n.8 (1995).

Upon our review of the record on appeal and West Virginia law, the charges in the indictment are sufficient. These charges cite and substantially follow the language of the relevant statutes.[3] The counts identified the victim as C.S., described the sexual offenses at issue, and set out a period for the offenses, October 1, 2013, through October 1, 2015. Although the petitioner contends that we should require greater specificity as set forth in *Valentine v. Konteh*, 395 F.3d 626 (6th Cir. 2005), we have consistently declined to do so and do not find a reason to depart from our precedent under the circumstances in this case. *See Ballard v. Dilworth*, 230 W. Va. 449, 455-56, 739 S.E.2d 643, 649-50 (2013) (discussing *Valentine* and finding it nonbinding on this Court). Further, in *Dilworth* we quoted, with approval, the dissent in *Valentine* that explained "'no [U.S.] Supreme Court case has ever found the use of identically worded and factually indistinguishable indictments *unconstitutional.*' *Valentine*, 395 F.3d at 639 (Gilman, J., dissenting) (emphasis in original)." *Dilworth*, 230 W. Va. at 457, 739 S.E.2d at 651. And to the extent the petitioner complains about the two-year date range alleged in the indictment, "'[f]airly large time windows in the context of child abuse prosecutions are not in conflict with constitutional notice requirements' because of the inherent difficulties in investigating and prosecuting child abuse." *United States v. Beasley*, 688 F.3d 523, 533 (8th Cir. 2012) (citing *Valentine*, 395 F.3d at 632); *see also Frank A. v. Ames*, 246 W. Va. 145, 170, 866 S.E.2d 210, 235 (2021) (rejecting a challenge to an indictment predicated on the breadth of the date range provided because time is not an element of sexual offenses and need not be specified in the indictment). In conclusion, we agree with the circuit court that the indictment provided reasonable notice to the petitioner of these charges and sufficient protection against double jeopardy given the detail supplied. Because we find that the indictment adequately advised petitioner of the charges, we also find that the circuit court did not abuse its discretion in denying the motion for a bill of particulars.

Second, the petitioner argues that the circuit court erred when it excluded evidence of C.S.'s "sexual contact with an older woman" under the rape shield law. The petitioner asserts that the circuit court's order excluding evidence of C.S.'s sexual relations with the older woman violated his right to due process because it would have given the jury an "alternative" theory of the case and explained Mr. McCullough's testimony that C.S. exhibited traits consistent with a victim of sexual assault or sexual abuse. We disagree.

Rule 412(a) of the West Virginia Rules of Evidence generally prohibits the admission of the sexual history of a victim of sexual crimes. Rule 412(b)(1)(D) provides an exception to this general rule in criminal cases, for "evidence whose exclusion would violate the defendant's constitutional rights."

---

[3] A person is guilty of first-degree sexual abuse when the person, who is fourteen years old or more, subjects another person under the age of twelve to sexual contact. W. Va. Code § 61-8B-7(a)(3). Further, a person is guilty of first-degree sexual assault when the person, who is fourteen years old or more, engages in sexual intercourse with another person who is younger than 12 years old. W. Va. Code § 61-8B-3(a)(2).

The test used to determine whether a trial court's exclusion of proffered evidence under our rape shield law violated a defendant's due process right to a fair trial is (1) whether that testimony was relevant; (2) whether the probative value of the evidence outweighed its prejudicial effect; and (3) whether the State's compelling interests in excluding the evidence outweighed the defendant's right to present relevant evidence supportive of his or her defense. Under this test, we will reverse a trial court's ruling only if there has been a clear abuse of discretion.

Syl. Pt. 6, *State v. Guthrie*, 205 W. Va. 326, 518 S.E.2d 83 (1999).[4]

The circuit court ruled that this evidence was not relevant to prove that someone other than the petitioner could have caused C.S. to exhibit these traits, because Mr. McCullough testified that C.S. did not view his relationship with the older woman as being traumatic. Because this relationship occurred years after the crimes and the petitioner was not traumatized by it, this evidence was not relevant to provide another explanation for Mr. McCullough's testimony that C.S. exhibited traits consistent with a victim of sexual assault or sexual abuse. And because this evidence was not relevant to prove the petitioner's "alternative theory," it was also not admissible to impeach Mr. McCullough's credibility or to present a "complete defense" to the jury. Thus, we conclude that the court did not abuse its discretion when it excluded this evidence.

Third, the petitioner claims that the court erred when it admitted Rule 404(b) evidence of his prior convictions for sex crimes in 1995 to prove that he had a lustful disposition toward children. *See* Syl. Pt. 2, *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990) (holding that "[c]ollateral . . . crimes may be introduced in cases involving child sexual assault . . . to show the perpetrator had a lustful disposition . . . towards children generally . . . provided such evidence relates to incidents reasonably close in time to the incident(s) giving rise to the indictment"). The petitioner argues that his 1995 convictions were not relevant because they were too remote in time from his charges in this case, which occurred between 2013 and 2015. The petitioner also argues that his prior convictions were not relevant because they involved an eight-year-old female, and in this case the charges involve a male between the ages of nine and eleven years old.

The standard of review for a trial court's admission of evidence pursuant to Rule 404(b) involves a three-step analysis. First, we review for clear error the trial court's factual determination that there is sufficient evidence to show the other acts occurred. Second, we review *de novo* whether the trial court correctly found the evidence was admissible for a legitimate purpose. Third, we review for an abuse of discretion the trial court's conclusion that the "other acts" evidence is more probative than prejudicial under Rule 403.

---

[4] *See Harvey v. Yoder*, 239 W. Va. 781, 786 n.9, 806 S.E.2d 437, 442 n.9 (2017) (ruling that "[t]he *Guthrie* test was developed under the rape shield law that existed prior to the adoption of Rule 412 in 2014. The test, however, is still workable for a constitutional challenge under Rule 412(b)(1)(D)."); *State v. Timothy C.*, 237 W. Va. 435, 444, 787 S.E.2d 888, 897 (2016) (applying the *Guthrie* test).

*Timothy C.*at 443, 787 S.E.2d at 896 (2016) (citations omitted). Because the petitioner contends that his prior convictions were too remote in time to be admissible, his argument pertains to the third step in this analysis: whether the circuit court's conclusion that the evidence was more probative than prejudicial amounted to an abuse of discretion. Therefore,

> [o]ur function on this appeal is limited to the inquiry as to whether the trial court acted in a way that was so arbitrary and irrational that it can be said to have abused its discretion. In reviewing the admission of Rule 404(b) evidence, we review it in the light most favorable to the party offering the evidence, . . . maximizing its probative value and minimizing its prejudicial effect.

*State v. McGinnis*, 193 W. Va. 147, 159, 455 S.E.2d 516, 528 (1994). "As a general rule remoteness goes to the weight to be accorded the evidence by the jury, rather than to admissibility." Syl. Pt. 6, *State v. Gwinn*, 169 W. Va. 456, 288 S.E.2d 533 (1982). When this Court determines whether Rule 404(b) evidence is too remote to be admissible, this Court "examines [all] the facts and circumstances of each case." *State v. LaRock*, 196 W. Va. 294, 312, 470 S.E.2d 613, 631 (1996).

In this case, the circuit court conducted two pretrial hearings to consider whether the petitioner's prior convictions would be admitted at trial. The court thereafter concluded that the petitioner's prior convictions were admissible "for the purpose of showing that [he] had a lustful disposition toward children." We agree that under the facts and circumstances of this case, the petitioner's prior convictions were probative for the purpose of establishing the petitioner's lustful disposition towards children, and their probative value substantially outweighed their prejudicial effect. Significant to this outcome is the similarity in age between the victims. Furthermore, although there was an eighteen-year gap between the petitioner's previous convictions and the conduct at issue in this case, the petitioner was incarcerated for the majority of that time, and the charges in this case occurred only a short time after being released. Therefore, we conclude that the court's admission of the petitioner's prior convictions was not so arbitrary and irrational that it was an abuse of discretion under Rule 404(b).[5]

Fourth, the petitioner argues that the circuit court erred when it excluded evidence that C.S. had been using marijuana when he made his initial allegation against the petitioner. The petitioner

---

[5] The petitioner raises an additional assignment of error arguing that the circuit court should have conducted a 404(b) hearing before allowing the State to cross-examine him regarding his confession from the 1995 case after he testified that case was based on "lies." This argument fails because the petitioner's confession underpinned his prior convictions that the court had already found to be admissible under an exception to Rule 404(b) to prove his "lustful disposition towards children." *Edward Charles L.*, 183 W. Va. at 643, 398 S.E.2d at 125, Syl. Pt. 2, in part. Because the confession was related to the prior convictions that the court had already found to be admissible after conducting the required analysis, we cannot say that the court abused its discretion by allowing the State to impeach the petitioner's testimony with his own confession without conducting another 404(b) hearing. And to the extent there was any error, it was harmless because the remaining evidence of his guilt was sufficient to support his convictions. *See* Syl. Pt. 5, *State v. Moore*, 189 W. Va. 16, 427 S.E.2d 450 (1992) (providing a test for determining harmless error).

argues that C.S.'s marijuana use gave him a "motive or interest" to fabricate allegations against him "to redirect any punishment that he may receive for said drug use."

This Court reviews a decision to admit or exclude evidence under an "abuse of discretion" standard. Syl. Pt. 2, in part, *State v. Harris*, 230 W. Va. 717, 742 S.E.2d 133 (2013). We have held that "Rule 608(b) of the West Virginia Rules of Evidence limits the admissibility of evidence of specific instances of conduct for the purpose of attacking the credibility of a witness. . . . [This] evidence is admissible only if probative of truthfulness or untruthfulness." Syl. Pt. 6, in part, *State v. Murray*, 180 W. Va. 41, 375 S.E.2d 405 (1988). In this case, although C.S. admitted to Mr. McCullough that he had used marijuana, the record reflects no evidence that he faced any punishment for doing so or that the usage otherwise motivated C.S. to fabricate allegations against the petitioner. Because the record reflects no evidence connecting any alleged marijuana use to C.S.'s credibility, it is not probative of his truthfulness. *See State v. Johnson*, 213 W. Va. 612, 615, 584 S.E.2d 468, 471 (2003) (finding no error in the exclusion of evidence that a witness used crack cocaine prior to the witness's identification of the defendant where the drug usage "had no impact upon the [truthfulness or untruthfulness, accuracy or inaccuracy of the] identification process"). Accordingly, we cannot conclude that the court abused its discretion when it ruled that this evidence was irrelevant and inadmissible.

Finally, the petitioner argues that his statement to police in this case should have been suppressed because it was obtained in violation of the prompt presentment rule. When reviewing the circuit court's ruling on the motion to suppress, legal conclusions are reviewed de novo, factual determinations are reviewed for clear error, and "determinations of witness credibility are accorded great deference." Syl. Pt. 3, in part, *State v. Stuart*, 192 W. Va. 428, 452 S.E.2d 886 (1994). The prompt presentment rule contained in West Virginia Code § 62-1-5 and Rule 5(a) of the West Virginia Rules of Criminal Procedure is triggered when an accused "is placed under arrest," or "is in police custody with sufficient probable cause to warrant an arrest . . . ." Syl. Pt. 2, in part, *State v. Humphrey*, 177 W. Va. 264, 351 S.E.2d 613 (1986). We have also recognized, however, that "[c]ertain delays . . . in . . . completion of booking and administrative procedures . . . do not offend the prompt presentment requirement." *State v. Rogers*, 231 W. Va. 205, 210, 744 S.E.2d 315, 320 (2013) (citations omitted). When a defendant's statement to authorities is at issue, this Court has held:

> "The delay in taking a defendant to a magistrate may be a critical factor [in the totality of circumstances making a confession involuntary and hence inadmissible] where it appears that the primary purpose of the delay was to obtain a confession from the defendant." Syllabus Point 6, *State v. Persinger*, [169] W.Va. [121], 286 S.E.2d 261 (1982), as amended.

Syl. Pt. 1, *State v. Guthrie*, 173 W. Va. 290, 315 S.E.2d 397 (1984). But as we stated in Syllabus Point 8 of *State v. Worley*, 179 W. Va. 403, 369 S.E.2d 706 (1988), "'[o]rdinarily the delay in taking an accused who is under arrest to a magistrate after a confession has been obtained from him does not vitiate the confession under our prompt presentment rule.' Syllabus Point 4, *State v. Humphrey*, 177 W.Va. 264, 351 S.E.2d 613 (1986)."

8

Here, the circuit court found that the primary purpose of the delay in presentment was not to obtain a confession because after arrest, the petitioner was taken to the State Police barracks for "routine processing," where he agreed to give a statement to police. The petitioner was then taken to jail and was not arraigned by the magistrate until the next morning, because the magistrate was not available after he completed processing. The petitioner does not challenge Chief Deputy Sigley's testimony that administrative booking procedures were performed when he was taken to the barracks. Likewise, there is no dispute that the magistrate was unavailable until the next morning. This case is similar to *State v. Rogers*, 231 W. Va. 205, 211-12, 744 S.E.2d 315, 321-22 (2013), in which we ruled there was no prompt presentment violation where a post-arrest interview was a part of typical booking procedures. And like *State v. Simmons*, 239 W. Va. 515, 528, 801 S.E.2d 530, 543 (2017), "[o]ur review of the record does not reveal any other conduct or activity that suggests any motive or purpose to coerce or induce a confession" by delaying presentment of the petitioner to the magistrate. Therefore, we conclude the court did not err in its determination that the prompt presentment rule was not violated.

For the foregoing reasons, we affirm the Circuit Court of Tucker County's October 24, 2022, sentencing order.

Affirmed.

**ISSUED:** November 26, 2024

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn

9